# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MICHAEL P. CURLEY,

    Plaintiff,

v.

CITY OF NORTH LAS VEGAS,

    Defendant.

Case No. 2:09-CV-01071-KJD-VCF

**ORDER**

    Before the Court is the Motion for Summary Judgment (#29) of Defendant City of North Las Vegas. Plaintiff has filed a response(#33) and Defendant has filed a reply (#39).

I. Background

    Plaintiff Michael Curley was employed with the City of North Las Vegas, (the "City") as a Pretreatment Inspector. There are three main duties of a Pretreatment Inspector: (1) operating each of the two Vactor trucks, (2) operating the camera truck, and (3) inspecting grease interceptors. At the time of Plaintiff's employment, each of the City's eight pre-treatment inspectors was required to spend about 50% of their time operating Vactor trucks. Equal rotation in Vactor truck operation ensured that each employee was proficient in the use of this vital equipment and complied with Union requirements regarding training and noise exposure.

In 2006, Plaintiff claimed a permanent partial disability under Nevada worker's compensation laws based on alleged hearing loss. On December 17, 2007, Plaintiff was examined by Dr. Karen Rae Doddy, to evaluate his claim of a hearing injury. Plaintiff claimed to be suffering from Bilateral Ear Tinnitus and high frequency hearing loss in both ears. On December 17, 2007, Dr. Doddy issued her report on Plaintiff's claimed permanent partial disability. Dr. Doddy's report indicates that while Plaintiff demonstrates a hearing impairment at levels of 4000 to 8000 Hz, Plaintiff has a "binaural hearing impairment of 0%." (#29 Ex. H at 1, 6.) Dr. Doddy also found that Plaintiff was "able to achieve 96% in speech recognition threshold with words presented to both ears at elevated conversation levels of 70 dB." (Id.) Dr. Doddy concluded that Plaintiff is "deemed to have 3% whole person impairment for Tinnitus that impacts the ability to perform activities of daily living." (Id.) Plaintiff admitted that he has never received any prior or subsequent reports that would conflict with Dr. Doddy's findings in her report. (#29 Ex. B, Curley Depo. at p. 80, l. 4 - p. 82, l. 5.)

On January 16, 2009, Plaintiff requested a reasonable accommodation under the Americans With Disabilities Act[1] ("ADA") to have less exposure to loud noises "by having me do little or limited work on the Vactor truck." (#29 Ex. I, Letter from Curley to Larry Mundy dated January 16, 2009; Ex. B, Curley Depo. at 107). On January 28, 2009, Plaintiff met with Larry Mundy, the City's ADA Coordinator, to discuss this accommodation. Plaintiff claimed that the only accommodation that the City could provide would be removal from the Vactor truck. Mundy indicated to Plaintiff his belief that wearing double hearing protection was a reasonable accommodation. Plaintiff maintained his position that removal from the Vactor truck was the only acceptable accommodation.

On February 10, 2009, Plaintiff and another employee, Jon Munson were heading out to work on the Vactor truck. Plaintiff was wearing double hearing protection and no hearing aids. Munson twice asked Plaintiff to tell him the mileage on the Vactor truck. Plaintiff claims he could not hear

---

[1] The Americans with Disabilities Act Amendments Act of 2008 (ADAAA), Pub.L. No. 110–325, 122 Stat. 3553 (2008), amended the Americans with Disabilities Act of 1990(ADA), and became effective as of January 1, 2009. Although the ADAAA amendments included sections of the ADA discussed by Plaintiff, the Court will refer to Plaintiff's claims as brought under the ADA for the sake of clarity and consistency.

1   Munson. Munson then asked Plaintiff "why don't you take out the ear plugs." Plaintiff admits that
2   he heard Munson ask him to remove the earplugs. Plaintiff angrily put his finger in Munson's face
3   and exclaimed "are you a f**king doctor? I am doing what the City requires me to do unless you are
4   a f**king doctor don't tell me what I need to do." (#29 Ex. L, Munson Memo dated February 10,
5   2009.) Plaintiff's immediate supervisor, Tom Rura, became involved. Plaintiff continued to speak
6   abusively to Munson and Rura. The situation escalated and Plaintiff left the workplace on leave.
7   When Plaintiff was provided with a copy of the written reprimand for this incident, Plaintiff
8   threatened Rura by saying, "I own you" and "I am going to have some people pay you a
9   visit." This situation prompted an investigation by the City's Human Resources Department.

10   Sherry Morris, a Senior Human Resource Analyst for the City, conducted the investigation.
11   Plaintiff's co-workers reported that Plaintiff's threat was not an isolated incident and that his threats
12   had become increasingly violent. Several of Plaintiff's co-workers reported that Plaintiff had
13   threatened them or their families. Specifically Floyd Johnson reported that Plaintiff threatened to
14   kick his teeth out for not joining the Union. Ryan Miller reported that Plaintiff threatened to shoot
15   David Bereskin, the Director of the Utilities department, in the knee cap. He also reported that
16   Plaintiff threatened to give Bereskin's children a "blanket party" – where a blanket is thrown over
17   someone while they are beaten. Jon Munson reported that Plaintiff threatened to put a bomb under
18   the car of anyone that took food off his table, and Munson feared for the safety of his wife and kids.
19   Munson and John McIntire reported that Plaintiff accused Bereskin of murdering his wife.

20   In addition to the threats of violence, coworkers reported that they dreaded working with
21   Plaintiff and that he spent 1 -3 hours a day on his cell phone conducting personal business during
22   work hours, thus making co-workers do his work for him. Plaintiff also encouraged his co-workers to
23   slow down their productivity so that they would not make management look good.

24   Ms. Morris concluded her investigation on February 25, 2009 and reported her findings,
25   along with a recommendation that a hearing be conducted to address Plaintiff's threats of physical
26   violence, poor relationships with co-workers, conducting personal business while at work, and

attempted to coerce other employees into reduced productivity. The hearing was held on March 10, 2009 and Plaintiff was allowed to fully participate. After the hearing, on March 12, 2009, Austin Scaccia, Chief Labor Relations Manager, recommended to Joyce Lira, Director of Human Resources, that Plaintiff be terminated. On March 25, 2009, Plaintiff's employment was terminated.

On May 28, 2009, Plaintiff filed a complaint alleging disability discrimination in violation of the ADA and NRS 613.330, retaliation based on his request for an accommodation and filing an EEOC/NERC charge in violation of the ADA and NRS 613.330, negligent infliction of emotional distress and negligent hiring, training, and supervision.

## II. Discussion

### A. Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See, Celotex, 477 U.S. at 323.

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Disability Discrimination and Failure to Accommodate

In order to prove a prima facie claim for failure to accommodate under the ADA, a plaintiff must show that: (a) he is disabled within the meaning of the ADA; (b) he is qualified to perform the

essential functions of the position with or without a reasonable accommodation; and (c) he suffered an adverse employment action because of his disability. See Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir.2003); see also U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002).[2] If a prima facie case is made, a defendant can rebut the prima facie case by "offer[ing] a legitimate, nondiscriminatory reason for its decision." Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9 Cir. 1995). The burden then shifts to the plaintiff to provide "specific, substantial evidence of pretext in order to avoid summary judgment." Id.

### 1. Disability Under the ADA

The ADA defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA Amendments Act of 2008 ("ADAAA") made it easier for plaintiffs to prove they are "disabled" under the ADA, providing that a disability "shall be construed in favor of broad coverage of individuals" and that a finding of disability "should not demand extensive analysis." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.1(c)(4). The post-ADAAA EEOC regulations provide that, to create a disability under this definition, an impairment need only "substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Further, "substantially limits" is "not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j), (k). "Major life activities" that must be substantially limited include, but are not limited to, "hearing... and working" or "[t]he operation of major bodily function...." 29 C.F.R. § 1630.2(i)(1)(i)-(iii).

---

[2] Nevada looks to federal courts when interpreting discrimination claims under NRS 613.330. Pope v. Motel 6, 121 Nev. 307, 311, 114 P.3d 277, 280 (2005)

5

In determining whether an individual is substantially limited in a major life activity, EEOC guidance suggests that courts consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment." 29 C.F.R. § 1630.2(j).

The parties do not dispute that hearing is a major life activity. It is also undisputed that Plaintiff has "binaural hearing impairment of 0%" and that he is "able to achieve 96% in speech recognition" at 70db resulting in his being "deemed to have 3% whole person impairment for Tinnitus that impacts the ability to perform activities of daily living."[3] This indicates that the severity of the impairment is limited.  Plaintiff is likely to continue to suffer from Tinnitus, but he admits that without hearing aids and while wearing two sets of earplugs, he was able to hear co-workers speaking to him. This admission demonstrates that the expected long term impact of the impairment is small. Even under the broadened definition of disability in the now-amended ADA "not every impairment will constitute a disability within the meaning of [the ADA]" 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff's has failed to show that his impairment is substantially limiting. If impairment at the levels experienced by Plaintiff amounts to "substantial" limitation that word has no meaning and any hearing impairment could constitute a disability. Accordingly, summary judgment is granted in favor of Defendant on the issue of disability.

### 2. Qualification to Perform the Essential Functions of His Position

Even if Plaintiff was able to show that his hearing impairment constituted a disability, he would still be required to demonstrate that he is qualified for the position.

---

[3] Plaintiff's opposition to the Motion for Summary Judgment seeks to include several other physical and mental issues related to his Tinnitus. To support this, Plaintiff has provided a vague and conclusory affidavit. However, the Complaint and responses to interrogatories only specify hearing loss and Tinnitus as the nature and extent of Plaintiff's condition. Plaintiff's affidavit fails to create an issue of fact precluding summary judgment. See Burrell v. Star Nursery, Inc., 170 F.3d 951, 954 (9th Cir.1999)(affidavit which differed from deposition testimony did not create issue of fact).

a. Lack of Qualification Based on Threats of Violence

An employee who is threatening, hostile, proactive, and uncooperative is not "qualified" and "the ADA does not require that an employee whose unacceptable behavior threatens the safety of others be retained." In Calef v. Gillette Co., 322 F.3d 75, 80-81, 87 (1 Cir. 2003)(employee was not qualified where co-workers reported that they "feared for their safety" based on threats and other behavior). See also Sullivan v. River Valley School Dist., 197 F.3d 804, 813 (6th Cir. 1999)("Even were Sullivan to provide evidence that he was regarded as disabled, he would also have to establish that he is otherwise qualified for the job he held ....since threatening other employees disqualifies one from a job, Sullivan would not be able to meet this requirement.")(quotations omitted).

Defendant has cited several instances where coworkers Thomas Rura, Floyd Johnson, Ryan Miller, and Jon Munson reported that Plaintiff made threatening comments which have caused them anxiety. Plaintiff's threats of violence include threatening a co-worker with bodily harm, setting car bombs, shooting knee caps, and harming the children of the Director of Utilities as well as other conduct that was provocative and subversive. These complaints were investigated by City officials and Plaintiff was given an opportunity to respond. Based on the severity and extent of the threats made by Plaintiff, the City terminated Plaintiff's employment in order to ensure the safety of City employees. Plaintiff does not dispute that he made these threats or argue that he is qualified notwithstanding having made these threats. Based on this repeated conduct, Plaintiff was unqualified to hold any job with the City.[4] Accordingly, summary judgment is granted in favor of Defendant on the issue of qualification based on threats of violence.

b. Lack of Qualification Based on Essential Job Function

An employee seeking to prove that he is "qualified," must show that he can perform the "essential functions" of the job. 42 U.S.C. § 12111(8). "If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation) then the ADA's employment

---

[4] Plaintiffs argument that he could have been reassigned to another job in the City is also without merit because he has failed to identify any open positions in the City.

protections do not apply." Bates v. United Parcel Service, Inc., 511 F.3d 974, 990 (9th Cir. 2007). Under the ADA and implementing regulations, the court must consider, among other things, "'[1] the employer's judgment as to what functions of a job are essential,' 42 U.S.C. § 12111(8); [2] 'job descriptions prepared before advertising or interviewing applicants' [42 U.S.C. § 12111(8)]; [3] 'the amount of time spent on the job performing the function,' 29 C.F.R. § 1630.2(n)(3)(iii); [4] 'the consequences of not requiring the [applicant or employee] to perform the function,' [29 C.F.R.] § 1630.2(n)(3)(iv); and [5] the work experience of current and former employees. [29 C.F.R.] § 1630.2(n)(3)(vi), (vii)." Id. "The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." Dark v.. Curry County, 451 F.3d 1078, 1089 (9th Cir.2006).

Plaintiff claims that his impairment is a disability that prevents him from operating the Vactor truck and that accommodation could have been made to his job by requiring other employees to operate the Vactor truck. Plaintiff argues that operating the Vactor truck is not an essential function of the job of Pretreatment Inspector. Defendant has provided testimony from Plaintiff's supervisors stating that 50% of a Pretreatment Inspector's job is operation of the Vactor truck and that it is essential to this job function. The job description for Plaintiff's position stated that operation of the Vactor truck is one of the "minimum requirements" for the position. Plaintiff has not disputed Defendant's evidence that rotation of Vactor truck responsibilities between all Pretreatment Inspectors is necessary to ensure proper functioning of the department, prevent incurring state fines related to spillage, and comply with Union requirements. Instead, Plaintiff argues that an Assistant Administrator of Nevada Water Environmental Association Certification Board told him via email that operation of the Vactor truck was a "Collections System Operator" duty.[5] Plaintiff provides no authority showing that the opinion of an outside organization can create a dispute of fact about essential job function. On the other hand, there is ample authority giving weight to the employer's

---

[5] This email is also inadmissible hearsay which cannot be used to defeat summary judgment. See Kim v. United States, 121 F.3d 1269, 1277 (9th Cir. 1997).

judgment of essential job function. See, e.g. Dark v. Curry County, 451 F.3d 1078, 1087 (9th Cir. 2006)("consideration shall be given to the employer's judgment as to what functions of the job are essential")(quoting 42 U.S.C. § 12111(8)). Defendant has provided evidence showing that operation of the Vactor truck is an essential function of the job of Pretreatment Inspector in the City of North Las Vegas. Accordingly, summary judgment is granted in favor of the Defendant on this issue.

### 3. Adverse Employment Action Because of Disability

There is no dispute between the parties that Plaintiff suffered an adverse employment action. Defendant states that its legitimate and nondiscriminatory reason for terminating Plaintiff was Plaintiff's threatening behavior and problematic conduct in his relationship with other employees. Defendant cites to the report of the City's Human Resources department and to interviews with several of Plaintiff's co-workers as evidence of the misconduct. According to Defendant, Ms. Morris, who conducted the investigation, recommended that a hearing be conducted. A hearing was held on March 12, 2009 where the report was presented and Plaintiff was given the opportunity to be heard. Austin Scaccia, Chief Labor Relations Manager for the City recommended to Joyce Lira, Director of Human Resources, that Plaintiff be terminated because of his threatening conduct.

Where, as here, the employer articulates a legitimate, non-discriminatory reason for its adverse employment action, "the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir.2008). The Plaintiff must show "specific, substantial evidence of pretext." Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9 Cir. 1995). "Mere assertions that an employer had discriminatory motivation and intent is inadequate, without substantial factual evidence, to raise a genuine issue of material fact as to pretext in order to avoid summary judgment." Id. See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993)(holding that to show pretext the employee must prove "both that the [employer's] real reason was false, and that discrimination was the real reason").

Plaintiff offers no evidence to show that his disability and not his threatening behavior was the cause of his termination. Plaintiff's opposition to the summary judgment motion states:

> Although the termination most likely occurred in retaliation for Plaintiff filing an EEOC/NERC charge on December 30, 2008 and/or requesting reasonable accommodations on January 16, 2009 it is also quite possible that the termination was a result of the City failing to accommodate Curley's disabilities or because of the disabilities themselves.

(Oppo at 24.) Stating that "it is quite possible" that pretext exists does not constitute the substantial factual evidence necessary to create an issue of fact on the issue of disability discrimination. Further, Plaintiff has failed to demonstrate that the city refused a reasonable request for accommodation when it suggested that Plaintiff wear additional hearing protection rather than be excused from 50% of his job duties. Defendant has articulated a legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff has failed to provide any evidence showing that discrimination was the real reason for the termination. Accordingly, summary judgment on the issue of disability discrimination and failure to accommodate is granted in favor of the Defendant.

C. Retaliation

Under the ADA, a "prima facie case of retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two. Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1269 (9 Cir. 2009). See also Pope, 21 Nev. at 311-15, 114 P.3d at 280-82 (Nev. 2005)(looking to the federal courts for guidance when interpreting claims under NRS 613.340 for retaliation).

1. Involvement in a Protected Action

Plaintiff claims that he engaged in protected activity by filing a charge with the EEOC/NERC and by requesting reasonable accommodation. Defendant cites an Eleventh Circuit case for the proposition that in order to show that Plaintiff engaged in protected activity, Plaintiff must provide evidence "that would allow a rational fact finder to conclude that his belief that he was disabled under the ADA was objectively reasonable." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, (11 Cir. 1998). The Ninth Circuit has not specifically held that a plaintiff in an ADA case is required to

show that his belief that he was disabled was objectively reasonable in order to show that he was engaged in protected activity. Defendant cites Van Asdale v. International Game Technology, 577 F.3d 989, 1000 (9 Cir. 2009), a Sarbanes-Oxley Act case, for this proposition. Plaintiff does not dispute that this is the applicable legal standard and acknowledges this standard in his opposition. (Opp. at 26 fn 2.)  Since the parties agree that this is the standard and since there is an independent basis for denying Plaintiff's retaliation claim, as discussed *infra*, the Court will examine whether Plaintiff's belief that he was disabled was objectively reasonable in determining whether he engaged in protected activity.

Defendant argues that Plaintiff could not have had an objectively reasonable belief that was engaging in protected activity since he knew that he had "binaural hearing impairment of 0%" and that he was "able to achieve 96% in speech recognition" at 70db and he was "deemed to have 3% whole person impairment for Tinnitus that impacts the ability to perform activities of daily living" and had never had any diagnosis to contradict this finding. Defendant argues that his belief was also unreasonable because while Plaintiff was wearing two sets of earplugs, he was able to hear another employee speaking to him. Finally Defendant claims that Plaintiff knew that at least 50% of his job as Pretreatment Inspector involved operating the Vactor truck and so he could not have had a reasonable belief that he was entitled to be excused from operating the Vactor truck as a reasonable accommodation. Plaintiff has offered no evidence showing that he held an objectively reasonable belief that he was disabled when he made his EEOC/NERC charge. Plaintiff does not provide any evidence that he had a reasonable belief that he was entitled to the accommodation of being excused from 50% of his job duties because of his disability. Plaintiff has failed to demonstrate he had objectively reasonable belief regarding his disability and accommodation. Accordingly, he was not engaging in protected activity when he filed his EEOC/NERC charge and requested his accommodation.

## 2. Causal Link

A causal link may be shown: (1) through direct evidence of retaliatory intent, or (2) indirectly by showing the employer's proffered explanation is unworthy of credence. Vasquez v. Cnty of Los Angeles, 349 F.3d 634, 641 (9th Cir.2003). In order to establish that the adverse actions occurred because of his protected activities, an employee "must show that he was targeted for adverse treatment" based on his "protected activities." McAlindin v. County of San Diego, 192 F.3d 1226, 1239 (9 Cir. 1999).

Plaintiff has no direct evidence of retaliatory intent. Instead, Plaintiff argues that he has a long history of bad behavior and discipline while being employed by the City, but was only fired for this type of behavior in the months immediately following the filing of the EEOC/NERC charge and requesting an accommodation. Timing alone does not establish retaliation. Brown v. City of Tucson, 336 F.3d 1181, 1188 (9th Cir.2003)(temporal proximity of firing insufficient to overcome employer's proffered reason for firing employee). The City's extensive record of disciplining Plaintiff demonstrates that Defendant took Plaintiff's disruptive conduct seriously. Further, the record of Plaintiff's discipline shows that Plaintiff's conduct turned from obnoxious and discourteous to physically threatening in the months immediately prior to his dismissal. According to the report, not until February 11, 2009 did fellow employees relate concerns for their personal safety. On February 17, 2009, a co-worker filed a police report based on Plaintiff's threats of violence. Plaintiff does not dispute that he made these threats. Instead, he states in his opposition "[h]ad Plaintiff's conduct been so bad, he would have been terminated years ago." (Opp. at 27.) The evidence plainly shows that Plaintiff was fired because a long history of belligerence had crossed the line into violent threats that affected his co-workers. He was not terminated in retaliation. Accordingly, summary judgment is granted in favor of Defendant on the retaliation claim.

## D. Remaining State Law Claims

Defendant moved for summary judgment on Plaintiff's claims for negligent infliction of emotional distress and negligent hiring, training, and supervision. Defendant argues that the City is

entitled to judgment as a matter of law based on NRS 41.032(2). That statute "provides complete immunity from claims based on a state employee's exercise or performance of a discretionary function or duty. . . ." Martinez v. Maruszczak, 168 P.3d 720, 726 (Nev. 2007). Defendant also argued that the emotional distress claim is based entirely on Plaintiff's termination. Defendant states that termination under the circumstances presented here cannot amount to the "extreme and outrageous conduct" which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community" required to prevail on this claim. Maduike v. Agency Rental-A-Car, 114 Nev. 1, 4, 953 P.2d 24, 25 (1998)(citation and internal quotation omitted). Finally, Defendant argues that to maintain a negligent hiring, training, and supervision claim, Plaintiff must show that the employer knew that he was hiring an employee with "dangerous propensities." Hall v. SSF, Inc., 112 Nev. 1384, 1392-93, 930 P.2d 94, 98-99 (1996). Plaintiff has provided no such evidence.

Plaintiff has not filed any points or authorities in opposition to these arguments. Failure to provide points and authorities in opposition to a motion for summary judgment on a claim constitutes consent to the granting of summary judgment on that claim. See Local Rule 7-2. Defendant's arguments for summary judgment on the state law claims are supported by good cause. Accordingly, summary judgment is granted in favor of Defendant on these claims.

III. Conclusion

**IT IS HEREBY ORDERED THAT** Defendant City of North Las Vegas's Motion for Summary Judgment (#29) is **GRANTED**.

DATED this 25th day of April 2012.

_____
Kent J. Dawson
United States District Judge

13